IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

DOREEN SUMMERFIELD,

        Plaintiff,

v.

 

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO.: 5:19-CV-162
(BAILEY)

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Doreen Summerfield's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB") and Title XVI application for supplemental security income ("SSI"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Andrew Saul ("Commissioner"), Commissioner of Social Security.[1] Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence, the undersigned reports

---

[1] The undersigned notes that Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019.

and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 13] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 16] be **GRANTED**.

## II.   PROCEDURAL HISTORY

On October 18, 2013, Plaintiff previously sought disability benefits by filing a Title II application for a Period of Disability and Disability Insurance Benefits. R. 16. In that application, Plaintiff alleged disability beginning September 27, 2013. This claim was initially denied on February 7, 2014, and denied upon reconsideration on March 28, 2014. Id.  After Plaintiff filed a written request for a hearing, a hearing was held before an ALJ on April 16, 2014. Id. On December 4, 2015, the ALJ issued an unfavorable decision. R. 16, 194-209.

On or about March 2, 2016, Plaintiff filed the present claim for DIB and SSI, with an alleged onset date of disability of December 5, 2016.[2] R. 16. Plaintiff's application for DIB and SSI was initially denied on April 28, 2016, and upon reconsideration on June 3, 2016. R. 16, 210-220, 234-246. After these denials, Plaintiff requested a hearing before an ALJ. R. 303-304. On April 6, 2018, a hearing was held before an ALJ. R. 34. At the hearing in Morgantown, West Virginia, Plaintiff was represented by Andrea Pecora.[3] Id. Larry Ostrowski, a vocational expert, appeared in Morgantown and testified at the hearing. R. 32. On May 1, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since September 25, 2016, the amended alleged onset date of Plaintiff's disability. R. 27. On February 25,

---

[2] On March 21, 2018, Plaintiff moved to amend the onset date to September 25, 2016. R. 413.
[3] For clarification, after careful research, the undersigned believes Ms. Pecora is a non-attorney representative. Andrea Pecora Successfully Represents SSD Claims, Andrea Pecora & Associates (last visited December 16, 2019), https://andreapecora.com/successful-representation/.

2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On May 5, 2019, Plaintiff, through counsel, Scott B. Elkind, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed his Answer and the Administrative Record of the proceedings on September 25, 2019. Answer, ECF No. 6; Admin. R., ECF No. 7. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 13; Def.'s Mot. Summ. J., ECF No. 16. Neither party filed a response.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III.   <u>BACKGROUND</u>

### A.   Personal History

Plaintiff was born on February 27, 1972, and was forty-four years old at the time she made her application for DIB and SSI. R. 42, 210. She is 5'4" and weighs approximately 142 pounds. R. 43. She did not finish the eleventh grade and did not obtain her GED. R. 44. Plaintiff is married and lives with her husband. <u>Id.</u> She has two children that are twenty-five and twenty-three years old. <u>Id.</u> According to Plaintiff, she last worked

in September of 2016 for GoMart as a cashier and shift manager. R. 45. Plaintiff alleges

that she is limited in her ability to work due to fluid on the brain, scleroderma, Raynaud's

syndrome, lupus, HBP, depression, and anxiety. R. 430.

**B.   Medical History**

In accordance with the Court's Order Directing Filing of Briefs, the parties were

required to produce a stipulation of facts in order to provide the Court with a chronology

in narrative form of Plaintiff's relevant medical history. ECF No. 9, at 2. Accordingly, the

undersigned relies upon those stipulated facts throughout this report and

recommendation. See Mem. Supp. Pl.'s Mot. Summ. J. No. ECF 14, at 2–5; Def.'s Brief

Supp. Mot. Summ. J. ECF No. 17, at 4–6.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be "disabled" under the Social Security Act, a claimant must meet the following

criteria:

> [The] individual . . . [must have a] physical or mental impairment or
> impairments . . . of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such
> work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if
> he applied for work. . . . '[W]ork which exists in the national economy'
> means work which exists in significant numbers either in the region
> where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the

following five-step sequential evaluation process to determine whether a claimant is

disabled:

> (i) At the first step, we consider your work activity, if any. If you are
> doing substantial gainful activity, we will find that you are not
> disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

(iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If it is

determined that the claimant is "disabled" or "not disabled" during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.    ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since the December 5, 2015, alleged onset date of Plaintiff's disability. R. 19. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: demyelinating/inflammatory peripheral neuropathy of the upper and lower extremities, chronic obstructive pulmonary disease, restrictive lung disease, Raynaud's syndrome, and scleroderma/systemic sclerosis. Id. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. R. 21–22. At step four, the ALJ determined that Plaintiff has the RFC

> "to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) with the following limitations: a sit/stand option allowing a change of position briefly for 1-2 minutes every 30 minutes; must use a cane when standing and walking; no balancing, crouching, crawling, kneeling or climbing and no more than occasional stooping; no concentrated exposure to extreme heat and cold, wetness and humidity, vibration, respiratory irritants, or hazards such as dangerous moving machinery or unprotected heights; no more than frequent handling or fingering; instructions and tasks must be limited to those that can be learned 1 month or less; can carry out detailed but uninvolved written or oral instructions but no assembly line or fast paced production requirements."

R. 22. Then, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 26. At step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. R. 26-27. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 28.

## VI.    <u>DISCUSSION</u>

### A.  Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Id.</u> (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).

### B.  Contention of the Parties

In her Motion for Summary Judgment, Plaintiff contends that the ALJ's decision is unsupported by substantial evidence and erroneous as a matter of law. ECF No. 13.

Plaintiff asserts that "the [ALJ] erroneously assessed Plaintiff's [RFC]" by failing "to perform a function-by-function assessment of [Plaintiff's] ability to perform the physical and mental demands of work." ECF No. 14 at 6,8. Specifically, Plaintiff submits the following reasons: (1) the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion," (2) "[t]he ALJ failed to provide any explanation of what she meant by the term fast-paced production requirements," (3) the ALJ "did not address the Plaintiff's abilities to perform work-related functions throughout an eight-hour workday," and (4) the ALJ "failed to properly evaluate the Plaintiff's combination of impairments." Pl.'s Br. Supp. Mot. Summ. J., ECF No. 14 at 6-13. Additionally, Plaintiff contends that the ALJ failed to properly assess Plaintiff's subjective complaints. ECF No. 14 at 13-16. Based on the alleged errors, Plaintiff requests that the Court reverse the Commissioner's final decision and remand his case for a new administrative proceeding. ECF No. 13.[4]

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. ECF No. 16. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that the RFC and Plaintiff's credibility assessment are supported by substantial evidence. Def.'s Br. Supp. Mot. Summ. J., ECF No. 17. Accordingly, the Commissioner requests that the Court affirm the Commissioner's decision. ECF No. 17 at 15.

---

[4] Although Plaintiff's memorandum contains extensive block quotes from case law purportedly to support her arguments, she provides minimal analysis and explanation as to what detriments exist in the ALJ's decision.

### C. Analysis of the Administrative Law Judge's Decision

#### 1. The ALJ's RFC is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in performing the function-by-function assessment because she failed to set forth a narrative discussion, failed to define the term "fast-paced production requirements," failed to address Plaintiff's abilities to perform work-related functions throughout an eight-hour workday, and failed to properly evaluate Plaintiff's combination of impairments. ECF No. 14 at 6-13.

"The process for assessing RFC is set out in Social Security Ruling 96-8p." Monroe v. Colvin, 826 F.3d at 187 (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p, 1996 WL 374184 (July 2, 1996). "Under that ruling, the assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Monroe, 826 F.3d at 187 (internal quotations omitted) (citations omitted). Only once the ALJ considers a claimant's abilities on a function-by-function basis may he then express the claimant's RFC in terms of exertional levels of work. See id. The ALJ should take care not to express the claimant's RFC in terms of exertional levels of work first and then conclude that the limitations caused by the claimant's impairments are consistent with the RFC. See id. at 188. "[E]xpressing the RFC before analyzing the claimant's limitations function by function creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" Id. at SSR 98187–88 (quoting Mascio, 780 F.3d at 636). Additionally, "the residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical

facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" <u>Mascio</u>, 780 F.3d at 636 (quoting SSR 96-8p, 1996 WL 362207).

Although the ALJ is required to conduct a function-by-function analysis before expressing a claimant's RFC, the United States Court of Appeals for the Fourth Circuit has not adopted "a per se rule requiring remand when the ALJ does not perform . . . [said] analysis." <u>Mascio</u>, 780 F.3d at 636. Instead, the Fourth Circuit has taken the approach that "remand *may* be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." <u>Monroe</u>, 826 F.3d at 188 (emphasis added) (quoting <u>Mascio</u>, 780 F.3d at 636). Accordingly, the Court must first determine whether the ALJ failed to assess Plaintiff's capacity to perform relevant functions. <u>See id.</u> If so, the Court must then determine whether the ALJ's failure frustrates meaningful review because of contradictory evidence or other inadequacies in the record. <u>See id.</u> "[A] proper function by function analysis conducted by a state agency consultant can satisfy an ALJ's requirement to conduct a function by function assessment" because these assessments, if given weight by the ALJ, "provide support for the ALJ's RFC determination and allow the Court to conduct a meaningful review of the ALJ's analysis." <u>Sineath v. Colvin</u>, 1:16CV28, 2016 WL 4224051, at *5 (M.D.N.C. Aug. 9, 2016), <u>report and recommendation adopted</u>, No. 1:16-CV-28, M.D.N.C. Sept. 13, 2016, ECF No. 18.

    a.  <u>Narrative Discussion</u>

Plaintiff alleges that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." ECF No. 14 at 8. Specifically, Plaintiff asserts that the ALJ "failed

to provide a sufficient logical explanation, and therefore, the ALJ's analysis is incomplete." Id. at 9. Plaintiff cites to "Thomas v. Commission, 916 F.3d 307, 311-12, (4th Cir. 2019)" to support her argument. Id. at 8-9.

In the instant case, the undersigned concludes substantial evidence was set forth in the narrative discussion. When the ALJ set forth Plaintiff's RFC, the ALJ considered all symptoms in conjunction with the objective medical evidence and other evidence. R. 22. The ALJ also "fully considered and weighed the [RFC] from the prior Unfavorable Decision" and afforded "substantial weight to this prior decision as it represents [Plaintiff's] baseline on December 4, 2015." R. 22-23. However, the ALJ noted that Plaintiff's "physical condition has worsened since the date of the prior decision, requiring more restrictive postural, environmental, and nonexertional limitations." R. 23. Further, the ALJ explained that "to the extent that any previously stated evidentiary or other findings contained within the prior Unfavorable Decision remain un-contradicted and support the conclusions reached within the present determination, all are expressly incorporated by reference herein." Id.

To determine Plaintiff's RFC, the ALJ considered Plaintiff's Function Report, Information About Abilities, hearing testimony, medical treatment and history, the prior Unfavorable Decision, and the opinions of the state agency consultants. Ultimately, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." Id. The ALJ proceeded to explain the reasoning for the inconsistencies.

Specifically, with regard to Plaintiff's "demyelinating/inflammatory peripheral neuropathy of the upper and lower extremities," the ALJ concluded that "the degree of the symptoms alleged by the [Plaintiff] are inconsistent with the medical evidence" because "this impairment appears to be improving through medication and therapy." R. 24, 26.

To support this conclusion, the ALJ first considered Plaintiff's Function Report, Information About Abilities, and her testimony during the hearing. In the Function Report and Information About Abilities, Plaintiff "alleges that her impairments result in leg and finger pain," and limit "her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, memory, completing tasks, concentration, using hands, and getting along with others." R. 23. Additionally, Plaintiff "indicated that she could only lift a gallon of milk, and that she could only walk for about 10 minutes before needing 2-3 minutes of rest." Id. At the hearing, the ALJ noted that Plaintiff "testified that she experiences sharp pain in her legs as a result of nerve damage, and that she couldn't sit or stand for long periods of time." Id.

Second, the ALJ considered the medical evidence relating to Plaintiff's demyelinating/inflammatory peripheral neuropathy. In November 2016, Plaintiff had an electromyography ("EMG") that found Plaintiff suffered "mild, predominantly sensory, peripheral neuropathy," and the ALJ concluded that "the objective medical evidence is inconsistent with an individual suffering from debilitating neuropathic issues." R. 24.

Additionally, the ALJ found that "the chronology of [Plaintiff's] symptoms in response to treatment reveals that the [Plaintiff's] symptoms [relating to her demyelinating/inflammatory peripheral neuropathy] have shown consistent improvement since the alleged onset date." Id. For example, in November 2016, the ALJ explained that

Plaintiff attended multiple medical appointments for persistent leg pain and issues with ambulation. Id. As a result, Plaintiff was given a medication regimen and a referral to physical therapy. Id. Since that time, Plaintiff has attended physical therapy consistently, and even though her symptoms "waxed and waned in response to this treatment," Plaintiff "continued to show consistent improvement." Id. The ALJ elaborated on Plaintiff's improvement noting that "when she started physical therapy she was limited to a wheelchair, yet over the course of her treatment, her condition improved and she was eventually able to ambulate with a walker, and then able to ambulate with a cane. Id. During a follow-up appointment in January 2017, it was noted that Plaintiff's "weakness has improved significantly, [physical therapy] has been very helpful, [she] walks at home without assistance but uses a walker in public to help with balance and that her strength was overall reasonably intact." Id. The ALJ explained that during August 2017 through December 2017, Plaintiff had "generalized weakness in her hands and legs and difficulty standing for long periods of time." Id. However, since that time, Plaintiff has had "no further falls and was observed having 5/5 strength in her hands." Id. In January 2018, the ALJ explained that "it was observed that the [Plaintiff] walks slowly with a slight wide base gait but that her muscle strength in upper and lower extremities was 5/5." Id. Overall, the ALJ concluded that since the alleged onset date, Plaintiff has shown consistent improvement in response to treatment.

Third, the ALJ considered the opinion evidence of the State Agency medical consultants Saima Noon, M.D. and Subhash Gajendragakar, M.D. R. 25. Even though the state agency consultants conducted a function by function analysis, the ALJ afforded little weight to this evidence because it "failed to adequately address the manipulative and

postural issues associated with the [Plaintiff's] peripheral neuropathy…" Id. Additionally, the ALJ afforded the opinion of Farukh Khan, M.D. little weight because the medical evidence related to Plaintiff's neuropathy failed to support Dr. Khan's finding that Plaintiff "would be off-task for a majority of the workday." R. 26.

Based on this evidence, the ALJ concluded that that "[w]hile the [Plaintiff] was certainly debilitated in the beginning, the totality of this evidence does not support a finding that the [Plaintiff's] peripheral neuropathy was debilitating for 12 consecutive months." R. 23. However, the ALJ concluded that "the concentration issues resulting from Plaintiff's peripheral neuropathy symptoms merit[ed] additional mental accommodations" in her RFC. R. 24. Additionally, the ALJ noted that Plaintiff's "positive diagnostic test, well documented ambulation issues, and consistent treatment with physical therapy and medication" supported a more restrictive RFC than what Drs. Noon and Gajendragakar opined. R. 24-25.

With regard to Plaintiff's respiratory issues, the ALJ concluded that the "symptoms from [Plaintiff's] respiratory issues of chronic pulmonary disorder and restrictive lung disease are not disabling" because Plaintiff's Pulmonary Function Tests in July 2015 and August 2017 both show only a moderate restrictive impairment. R. 24. Specifically, the ALJ noted that the Pulmonary Function Test in July 2015 found Plaintiff to have a FEV1 of 75% and in August 2017 an FEV1 of 69%, both of which showed only a moderate restriction. Id. The ALJ elaborated that "these moderate findings do not support a disabling pulmonary impairment and they are adequately accommodated through limiting all exposure to respiratory irritants." Id. Additionally, the ALJ considered Plaintiff's previously discussed Function Report, her testimony during the hearing, and the medical

opinions from Drs. Noon and Gajendragakar. R. 23, 25. Specifically, the ALJ found Drs. Noon and Gajendragakar opinion's "fail[ed] to account for the respiratory issues revealed by [Plaintiff's] Pulmonary Function Test," and ultimately, the ALJ found Plaintiff "to have a more restrictive RFC" than what Drs. Noon and Gajendragakar afforded Plaintiff. R. 25.

Lastly, with regard to Plaintiff's various autoimmune diseases, specifically in the form of Raynaud's syndrome and scleroderma, the ALJ explained that "the medical evidence indicates that Plaintiff has suffered from these impairments years before the alleged onset date, and they have been consistently controlled through medication." Id. Specifically, Plaintiff's "prescription regimen appears to be effective in controlling the frequency and severity of her [Raynaud's syndrome's] symptoms," and through her treatment regimen, Plaintiff's scleroderma "appears to be controlled and static." Altogether, the medical evidence shows that the symptoms of these impairments are relatively well controlled and adequately accommodated in her RFC.

Accordingly, the undersigned was able to conduct a meaningful review of the ALJ's RFC determination because the ALJ cited evidence from Plaintiff's Function Report, Information About Abilities, hearing testimony, medical treatment and history, the prior Unfavorable Decision, and the opinions of the state agency consultants to support the ALJ's conclusion that Plaintiff's symptoms are not entirely consistent with the medical evidence and other evidence. Therefore, the undersigned finds substantial evidence supports the ALJ's decision, and the ALJ did nor err in her narrative discussion.

b. Fast-Paced Production Requirements

Plaintiff argues that the ALJ "failed to provide any explanation of what she meant by the term 'fast-paced production requirements.'" ECF No. 14 at 10. Plaintiff provides

elaborate block quotes from three cases to bolster her argument: <u>Thomas v. Commissioner</u>, 916 F.3d 307 (4th Cir. 2019), <u>Perry v. Berryhill</u>, 765 Fed. Appx. 869 (4th Cir. 2019), and <u>Kimberley B. v. Comm'r of Soc. Sec.</u>, Civ. No. 1:17-CV-2913, 2019 WL 1040869 (D. Md. March 4, 2019). <u>Id.</u> at 10-12.

However, these cases are distinguishable because not only did the ALJs fail to explain the terminology, the terminology was not defined in the regulations or common in Social Security cases. For example, the issue in <u>Thomas</u> stemmed from terminology used in the RFC. The ALJ found that the plaintiff could not perform work "requiring a production rate or demand pace." <u>Thomas</u>, 916 F.3d at 312. Ultimately, the court found that this terminology was not common in Social Security cases nor was enough information provided to understand what those terms meant. As in <u>Thomas</u>, the issue in <u>Perry</u> stemmed from the terminology – "non-production oriented work setting" – used in the RFC. <u>Perry</u>, 765 Fed. Appx. at 872. The court found the terminology "non-production oriented work setting" was not adequately explained in the ALJ's opinion, defined in the regulations or caselaw, or common enough to know what the terms meant without elaboration. Additionally, in <u>Kimberley. B.</u>, the court found that there was inadequate evidence to support the RFC determination because ALJ failed to explain certain terminology.

In this case, the ALJ used the terminology during the hearing, which was then included in the RFC determination, and the ALJ explained her reasoning for including the limitation in the RFC. The term "fast-paced production requirements" was posed in a hypothetical question during the hearing. R. 60. Specifically, the ALJ asked the following question to the vocational expert ("VE"):

> Now, if we assume an individual the same age, education, and work background as Ms. Summerfield, who's capable of performing sedentary work as defined in the regulations but has the following limitations. … Instructions and tasks must be limited to those that can be learned in one month or less. The person can carry out detail[ed] but uninvolved written or oral instructions, but no assembly line or fast pace production requirements. Would such a person be able to perform any of Ms. Summerfield's past work?

R. 60. In response, the VE did not ask for clarification regarding the question but answered, "No, Your Honor." Id. The ALJ then questioned the VE regarding Plaintiff's ability to perform other work. The VE testified that there were jobs at the sedentary, unskilled level that would comply with the ALJ's hypothetical. Such jobs included surveillance system monitor, call-out operator, and document preparer. R. 61. The VE testified that his testimony was consistent with the Dictionary of Occupational Titles, with the exception of the sit/stand option and the use of a cane in ambulation and standing. R. 62. When given the opportunity, Plaintiff's representative did not have any questions for the VE regarding his testimony or for the ALJ. R. 63. Ultimately, the hypothetical posed to the VE tracked the ALJ's RFC determination. Based on the testimony during the hearing, it is reasonable to conclude the VE and Plaintiff's representative understood the term fast paced production requirement as it applied to Plaintiff's case.

Additionally, the hypothetical posed to the VE tracked the ALJ's RFC determination. The ALJ acknowledged that Plaintiff's peripheral neuropathy resulted in concentration issues. R. 24. Due to these concentration issues, the ALJ determined that additional mental accommodations were warranted in Plaintiff's RFC. R. 24. Specifically, the ALJ limited Plaintiff to "instructions and tasks … that [could] be learned [in] 1 month or less" and to "carry[ing] out detailed but uninvolved written or oral instructions but no assembly line or fast paced production requirements." R. 22, 24. Thus, the ALJ explained

her reasoning for including the terminology in the RFC, and the language mirrored the hypothetical posed during the hearing.

Accordingly, Plaintiff's allegation is without merit because the VE and Plaintiff's representative understood the term as it applied to Plaintiff's case, and the ALJ explained her reasoning for including the term in the RFC.

### c. Ability to Perform Work-Related Functions in an Eight-Hour Workday

Plaintiff argues that the ALJ failed to "address the Plaintiff's abilities to perform work-related functions throughout an eight-hour workday." ECF No. 14 at 12. Specifically, Plaintiff contends that the ALJ failed to consider the testimony of the vocational expert who testified that "an[ ] individual off task greater than 10 percent of the workday would be incapable of competitive employment."[5] Id.

According to the Social Security Administration,

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 1996 SSR LEXIS 5, at *1. The Fourth Circuit has explained "that RFC determinations may contain implicit findings." Jackson v. Berryhill, C/A/ No. 5:15-2994-FDW, 2017 U.S. Dist. LEXIS 20586, at *36 (D.S.C. Feb. 14, 2017) (citing Hines v.

---

[5] The following is the hearing testimony between the ALJ and the vocational expert:

ALJ:   In this type of work, how much time off task is generally permitted?
VE:    There are studies that show that an individual can be off task up to 10% of a workday or work period and the individual still can generally achieve levels of productivity required by employers.
ALJ:   And what is - -
VE:    If an individual - -
ALJ:   I'm sorry. Go ahead, sir.
VE:    If an individual were to exceed the 10% limit on an ongoing basis, eventually an individual loses their job.

R. 61-62.

Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) ("In light of SSR 96-8p, … [the ALJ's] conclusion [that plaintiff could perform a range of sedentary work] implicitly contained a finding that [plaintiff] physically is able to work an eight hour day.")).

Here, the ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work." R. 22. When the ALJ determined Plaintiff's RFC, this determination implicitly contained a finding that Plaintiff is physically able to work an eight-hour day. Therefore, the ALJ's implicit finding is in accordance with SSR 96-8p.

With regard to Plaintiff's allegation that the ALJ did not consider the testimony of the VE, Plaintiff makes a generalized, exaggerated argument. The ALJ asked the VE about how much time an individual is permitted to be off task in jobs at the sedentary, unskilled level. R. 61. The VE responded that an individual can be off task up to ten percent of the workday. Id. Nowhere in the record did the VE "specifically testif[y] that an[ ] individual off task greater than 10 percent of the workday be incapable of competitive employment." ECF No. 14 at 12. Instead, it appears the ALJ was asking the VE questions to establish a baseline for how much time off task is appropriate for jobs at the sedentary, unskilled level. When given the opportunity, Plaintiff's representative did not have any questions for the VE regarding his testimony. Additionally, Plaintiff fails to cite to any evidence where it states Plaintiff would be off task ten percent of the workday.  Contrary to Plaintiff's allegation, the ALJ did address Plaintiff's abilities to perform work-related functions throughout an eight-hour workday when she determined Plaintiff could perform sedentary work in the RFC.

    d.  Evaluating Plaintiff's Combination of Impairments

Plaintiff alleges that the ALJ "failed to properly evaluate the Plaintiff's combination of impairments." ECF No. 14 at 12. Plaintiff provides a lengthy block quote from Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) to support her argument. Id. at 12-13.

In the instant case, the ALJ found that Plaintiff "has the following severe impairments: demyelinating/inflammatory peripheral neuropathy of the upper and lower extremities, chronic obstructive pulmonary disease, restrictive lung disease, Raynaud's syndrome, and scleroderma/systemic sclerosis." R. 19. "Additionally, [the ALJ found Plaintiff] has the following non-severe impairments: macrocytosis, tachycardia, hydrocephalus, Vitamin D overdose, and depression." R. 19. The ALJ explained that she "considered these nonsevere impairments when formulating [the] residual functional capacity" and noted that "some of these ailments were quickly resolved with the use of short-term medications, while others were more chronic in nature, but were well treated and produced no significantly limiting symptoms that lasted 12 continuous months." R. 19. The ALJ explained that additional discussion was warranted with regard to Plaintiff's Vitamin D overdose and depression. Specifically, the ALJ noted this impairment failed to meet the 12-month requirement. Id. Plaintiff's Vitamin D overdoes occurred in September 2016. Id. However the medical evidence shows that in October 2016, Plaintiff's Vitamin D level returned to normal. Id. Additionally, Plaintiff's treating physician indicated in October 2016 and January 2017 that it is unclear the connection with the Vitamin D overdose and her current symptoms. Id.

With regard to Plaintiff's depression, the ALJ explained that when "considered singly and in combination," Plaintiff's depression "does not cause more than minimal

limitation in Plaintiff's ability to perform basic mental work activities." R. 20.  In making this determination, Plaintiff accorded significant weight to the State Agency psychological consultants' PRT opinion by Frank Roman, Ed.D., who found that Plaintiff only had a mild limitation. Id. The ALJ found that Frank Roman's findings are consistent with Plaintiff's treatment history and mostly consistent with Plaintiff's Consultative Examination. R. 21. The ALJ also afforded partial weight to the reconsideration of State Agency consultant Karl Hursey, who found that Plaintiff had a moderate difficulty in maintaining concentration, persistence, or pace. Id. The ALJ found this finding to be inconsistent with a recent neurology appointment in January 2018 that found Plaintiff's attention span, concentration, and memory were intact. Id. Ultimately, the ALJ found that "[Plainitff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." R. 21-22.

The ALJ explained that Plaintiff's demyelinating/inflammatory peripheral neuropathy of the upper and lower extremities does not meet the listing requirement because she does not have "disorganization of motor function in two extremities" that result in "sustained disturbance of gross and dexterous movements, or gait and station, or a marked limitation in physical functioning with a marked limitation in one of the 'paragraph B' criteria." R. 22. Specifically, Plaintiff was found to only suffer from a "mild, predominantly sensory, peripheral neuropathy." R. 24. Her ambulation and gait have shown consistent improvement through physical therapy and her medication regimen, and Plaintiff's non-severe mental impairment ("paragraph B" criteria) causes no more than a minimal limitation in her ability to perform basic mental work activities. R. 20. Even though the ALJ did not find that Plaintiff has a severe mental impairment, the ALJ did find

that symptoms from Plaintiff's peripheral neuropathy result in concentration issues that warranted additional mental accommodations in the RFC. R. 24.

Plaintiff's chronic obstructive pulmonary disorder and restrictive lung disease fail to meet the listing requirement because Plaintiff's FEV1, diffusion capacity, arterial blood gasses, or pulse oximetry does not meet the listing level findings. R. 22. Specifically, Plaintiff's pulmonary function tests only show a moderate restrictive impairment. R. 24. Her tests fail to support a disabling impairment. Id. However, to accommodate Plaintiff, the ALJ limited her exposure to all respiratory irritants. Id.

With regard to Plaintiff's various autoimmune diseases, Plaintiff fails to meet the listing requirement for Raynaud's syndrome because she does not have gangrene in at least two extremities, or ischemia with ulceration of toes or fingers resulting in inability to ambulate effectively or to perform fine and gross movements effectively. R. 22. Additionally, Plaintiff fails to meet the listing requirements for scleroderma/systemic sclerosis because she does not have repeated manifestations of the disease, with at least two of the constitutional symptoms or signs and does not have a limitation at the marked level (including limitation of daily living activities, maintaining social functioning, or completing tasks in a timely manner). R. 22. Specifically, the totality of the medical evidence indicates that Plaintiff's autoimmune diseases have been relatively well controlled through medication and treatment regimens. R. 25. Additionally, the ALJ adequately accommodated Plaintiff by limiting her to less than a full range of sedentary work with manipulative and environmental limitations. Id. Accordingly, the ALJ sufficiently considered Plaintiff's severe and non-severe impairments singly and in combination because the ALJ explicitly stated Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments and cited relevant evidence to support her findings.

### 2. The ALJ's Credibility Assessment of Plaintiff is Supported by Substantial Evidence

Plaintiff argues that the ALJ's "evaluation of Plaintiff's subjective complaints fails to be supported by substantial evidence." ECF No. 14 at 16. Specifically, Plaintiff argues that because the ALJ required objective evidence of Plaintiff's subjective complaints, the ALJ applied an improper standard. Id. at 13. Plaintiff provides extensive block quotes from two cases to bolster her argument: Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006) and Lewis v. Berryhill, 858 F.3d. 858 (4th Cir. 2017).[6] Id. at 14-15. Briefly, Plaintiff argues that "[she] need not provide objective evidence to substantiate the intensity, persistence, and limiting effects of her subjective complaints." Id. at 16. However, Plaintiff does not cite

---

[6] As pointed out in Defendant's Brief [ECF No. 17] in Support of His Motion for Summary Judgment, Hines and Lewis are distinguishable from this case. In Hines, claimant suffered from sickle cell disease, which "is particularly insidious because it rarely produces the objective medical evidence that clinicians desire." Id. at 561. Claimant "applied for disability benefits based on his disease," but the Social Security Administration denied his claim mainly because his claims of disabling pain from the disease were not supported by objective evidence, even though his treating physician's opinion was that claimant was fully disabled. Id. The Court found that the ALJ applied an improper standard when the ALJ required objective evidence of pain. Id. at 561, 64.

In Lewis, the Court found that the ALJ's decision "failed to adequately explain his decision to deny [the claimant] benefits." Id. at 861.  Specifically, the ALJ "failed to satisfactorily explain his decision not to credit claimant's subjective complaints of … pain," and he "failed to adequately explain why he failed to give the opinions of claimant's treating physicians controlling weight." Id. at 866-67.

This case is distinguishable from Hines and Lewis because Plaintiff is not suffering from an insidious disease that rarely produces medical evidence. The ALJ included multiple sources of medical evidence throughout her report such as diagnostic tests, documented ambulation issues, and treatment and medication regimens to adequately explain her decision. R. 24-26. The ALJ did not make her determination based on solely on objective evidence. The ALJ considered Plaintiff's Function Report, hearing testimony, and the medical evidence to determine there were inconsistencies between Plaintiff's subjective complaints and the evidence.

specifically to the record or elaborate on Plaintiff's claim that the ALJ required objective evidence when evaluating Plaintiff's subjective complaints.[7]

Because the ALJ has the opportunity to observe the demeanor of the claimant, the ALJ's observations concerning the claimant's credibility are given great weight. Shively, 739 F.2d at 989–90. This Court has determined that "[a]n ALJ's credibility determinations are 'virtually unreviewable' . . . ." Ryan v. Astrue, No. 5:09CV55, 2011 WL 541125, at *3 (N.D. W. Va. Feb. 8, 2011). "If the ALJ meets . . . her basic duty of explanation, then 'an ALJ's credibility determination [will be reversed] only if the claimant can show [that] it was 'patently wrong.'" Criss v. Comm'r Soc. Sec., No. 5:16CV86, 2017 WL 2730647, at *3 (N.D. W. Va. June 26, 2017) (alteration in original) (citations omitted). The ALJ's "determination . . . must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

"[I]n assessing the credibility of a claimant's statements about pain and its functional effects, the ALJ is supposed to consider whether there are 'any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [her].'" Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (quoting 20 C.F.R. §

---

[7] For this section of the argument, Plaintiff cites to the record once, and it stated, "[a]lthough the [ALJ] specifically found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, she went on to find that the degree of symptoms alleged by the Plaintiff were inconsistent with the medical evidence. (Tr. 24)." ECF No. 16 at 15.

404.1529(c)(4)). "According to the regulations, the ALJ 'will not reject [the claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'' Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). While the ALJ is required to build an accurate and logical bridge from the evidence to his conclusion that a claimant's testimony is not credible, see Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016), "it is the ALJ's duty, not this Court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work." Redditt v. Colvin, No. 7:13-cv-391, 2014 WL 2800820, at *6 (W.D. Va. June 18, 2014).

In the instant case, the ALJ evaluated the credibility of Plaintiff's allegations that she is disabled due to demyelinating/inflammatory peripheral neuropathy of the upper and lower extremities, chronic obstructive pulmonary disease, restrictive lung disease, Raynaud's syndrome, and scleroderma/systemic sclerosis. R. 23. More specifically, the ALJ evaluated the credibility of Plaintiff's allegations that despite treatment, Plaintiff has difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, remembering, completing tasks, concentrating, using her hands, and getting along with others. R. 23. The ALJ also evaluated the credibility of Plaintiff's allegations that she has leg and finger pain, headaches, focusing problems, dizziness, and gripping problems, can "only lift a gallon of milk," "walk for about 10 minutes before needing 2-3 minutes of rest," and "only pay attention for 2-3 minutes." R. 23. Further, the ALJ was able to observe Plaintiff's demeanor at the hearing and consider her testimony "that she experiences

sharp pain in her legs as a result of nerve damage," she cannot sit or stand for long periods of time, and that she is sensitive to extreme heat and cold. R. 23.

Following the required two-step analysis, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce [her] alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record…" R. 23.

First, the ALJ provided an in-depth, narrative discussion of Plaintiff's medical treatment history for her demyelinating/inflammatory peripheral neuropathy of the upper and lower extremities, chronic obstructive pulmonary disease, restrictive lung disease, Raynaud's syndrome, and scleroderma/systemic sclerosis. R. 24-26. Second, the ALJ considered the opinions of the State Agency consultants. R. 25-26. Finally, the ALJ considered and weight the residual functional capacity from the prior Unfavorable Decision. R. 22.

With regard to demyelinating/inflammatory peripheral neuropathy, an EMG was performed in November of 2016, which showed Plaintiff suffered a "mild, predominantly sensory, peripheral neuropathy." R. 24. The ALJ concluded that "this objective diagnostic test is inconsistent with an individual suffering from debilitating neuropathic issues." R. 24. To support this conclusion, the ALJ detailed Plaintiff's medical treatments and history that showed consistent improvement in response to her physical therapy treatments. R. 24. Specifically, when Plaintiff started physical therapy, she was wheelchair bound, and then over the course of treatment, Plaintiff progressed to from using a walker to using a cane. R. 24. Over the course of treatment, Plaintiff progressed from having generalized

weakness in her hands and legs to having 5/5 muscle strength in her upper and lower extremities. R. 24. The ALJ acknowledged that while Plaintiff was certainly debilitated in the beginning the totality of the evidence does not support a finding that Plaintiff was debilitated for twelve consecutive months. R. 24.

With regard to Plaintiff's respiratory issues, the ALJ concluded that the "symptoms from [Plaintiff's] respiratory issues of chronic pulmonary disorder and restrictive lung disease are not disabling." R. 24. Specifically, the ALJ considered Plaintiff's Pulmonary Function Tests in July 2015 and August 2017 that both show only a moderate restrictive impairment. R. 24. The ALJ elaborated that "these moderate findings do not support a disabling pulmonary impairment, and they are adequately accommodated through limiting all exposure to respiratory irritants." Id.

Lastly, with regard to Plaintiff's various autoimmune diseases, specifically in the form of Raynaud's syndrome and scleroderma, the ALJ explained that "the medical evidence indicates that Plaintiff has suffered from these impairments years before the alleged onset date, and they have been consistently controlled through medication." R. 25. Specifically, Plaintiff's "prescription regimen appears to be effective in controlling the frequency and severity of her [Raynaud's syndrome's] symptoms," and through her treatment regimen, Plaintiff's scleroderma "appears to be controlled and static." R. 25. The treatment records indicate that Plaintiff's scleroderma has been "consistently observed as limited" and "described as stable with no new symptoms." R. 25. The totality of the evidence shows that the symptoms of these impairments are relatively well controlled and adequately accommodated in her RFC. R. 25.

Second, the ALJ considered the opinion evidence of the State Agency medical consultants Saima Noon, M.D. and Subhash Gajendragakar, M.D. who determined Plaintiff "is capable of lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking 2 hours out of an 8-hour workday, sitting for 6 hours out of an 8-hour workday." R. 25. The State Agency consultants opined that Plaintiff should be "limited to occasional postural movements and avoid concentrated exposure to extreme heat, cold vibrations, and hazards. R. 25. However, the ALJ afforded little weight to the State Agency consultants because they "failed to account for Plaintiff's respiratory issues" and "failed to adequately address the manipulative and postural issues associated with the [Plaintiff's] peripheral neuropathy Raynaud's syndrome, and scleroderma." Specifically, the opinions failed to consider these impairments result in some swelling and loss of sensation in Plaintiff's hands that merit additional manipulative limitations. Additionally, Plaintiff's ability to perform postural movements must be limited based on the extensive treatment history relating to the use of a cane for ambulation. R. 25. Ultimately, the ALJ afforded little weight to their opinions and determined Plaintiff is subject to a more restrictive residual functional capacity than provided by the State Agency consultants. R. 25.

Further, the ALJ considered the opinion of Farukh Khan, M.D. who determined that Plaintiff is limited to carrying approximately a gallon of milk occasionally, standing for 1-2 hours and sitting for 2 hours in an 8-hours workday, and never performing postural movements. R. 25. Also, Dr. Khan suggested Plaintiff would need to take unscheduled breaks of 15-30 minutes every Q-hour but failed to specify what a is Q-hour. R. 25-26. The ALJ afforded little weight to Dr. Khan's opinion because the medical evidence

(including the EMG revealing Plaintiff had mild neuropathy) failed to support Dr. Khan's finding that Plaintiff "would be off-task for a majority of the workday." R. 26.

Finally, the ALJ gave substantial weight to the prior Unfavorable Decision because it has some precedential value as it represents the Plaintiff's condition as December 4, 2015. R. 16. Specifically, in this case, Plaintiff's alleged onset date is September 25, 2016, only nine months after the prior Unfavorable Decision. R. 16. However, the ALJ did acknowledge that Plaintiff's physical condition has worsened since the prior decision, which requires a more restrictive RFC. R. 23. But the ALJ determined the findings in the prior decision remain un-contradicted and support the conclusions reached within the present determination. R. 23.

Plaintiff's allegation that the ALJ applied an improper standard because the ALJ required objective evidence of Plaintiff's subjective complaints is meritless. Considering the ALJ's credibility determination as a whole (i.e. R. 22-26), it is clear that the ALJ did not require objective evidence to substantiate the intensity, persistence, and limiting effects of Plaintiff's subjective complaints. Instead, only after considering the evidence did the ALJ determine that "the objective evidence does not support the alleged intensity and persistence of symptoms." R. 26. In determining so, the ALJ considered Plaintiff's Function Report, Information About Abilities, hearing testimony, medical treatment and history (including documentation that Plaintiff has shown consistent improvement in physical therapy and her autoimmune diseases are well controlled through her medical regimen), the prior Unfavorable Decision, and the opinions of the state agency consultants. There is no evidence that the ALJ required objective evidence to substantiate her subjective complaints. However, only after considering the conflicts in Plaintiff's

statements and the remaining of the evidence, did the ALJ determine that the evidence does not support the intensity, persistence, and limiting effects of her subjective complaints. Accordingly, the ALJ did not err as Plaintiff alleges, and his credibility determination is supported by substantial evidence.

## VII.   RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 13] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 16] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable JOHN PRESTON BAILEY, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures

for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 16th day of April, 2020

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE